1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINA L., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | CASE NO. C19-0142-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1970.[1] She has a high school education (AR 23, 35-36) and previously worked as a waitress, bartender, gambling dealer, and medical assistant (AR 23).

Plaintiff filed an application for DIB in September 2015, alleging disability beginning July 9, 2014. (AR 89.) The application was denied at the initial level and on reconsideration.

On November 2, 2017, ALJ Wayne N. Araki held a hearing, taking testimony from plaintiff

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

and a vocational expert. (AR 31-73.) On March 29, 2018, the ALJ issued a decision finding plaintiff not disabled from July 9, 2014, through the date of the decision. (AR 15-25.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on November 27, 2018 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease, joint dysfunction, sprains and strains and muscle/soft tissue disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform sedentary work except she could lift and carry 10 pounds occasionally; stand and walk for 10 to 15 minute intervals up to two hours total per day; sit for eight hours per day total; occasionally climb ramps and stairs but never ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasionally reach overhead; and frequently finger and handle. She could have

occasional exposure to extreme cold or vibrations; could not work at exposed heights or operating heavy equipment; and otherwise could have occasional exposure to hazards. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found plaintiff capable of performing other jobs, such as work as a touch up screener, document preparer, and table worker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues error in relation to the medical evidence and her symptom testimony. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing

reasons to reject a claimant's subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p. [2]

Plaintiff testified that she can stand only 20 minutes before her feet and back hurt. She could not be on her feet more than two hours total per day. She is being treated for depression. She must urinate at least hourly, including during the night. After just five minutes of housework her hands are numb and tingling. The ALJ incorporated her standing limitations into the RFC but imposed no mental limitations and no limitation related to urinary frequency, and only limited handling and fingering to frequently (*i.e.*, two-thirds of the day). (AR 19.)

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence in the record. He found inconsistency with plaintiff's activities. (AR 22 (pointing to preparing simple meals, shopping, driving, washing laundry with assistance carrying the basket, sweeping, and maintaining personal hygiene).) The ALJ also pointed to plaintiff's receipt of unemployment benefits for nine

---

[2] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

months after the alleged onset date, unclear reasons for leaving her last job, failure to follow treatment recommendations, and a provider's opinion that plaintiff should return to work. (AR 22.) The ALJ also found plaintiff's testimony was not fully supported by the medical record. (AR 20, 22.)

An ALJ may discount a claimant's testimony based on daily activities that contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, however, no contradiction was shown. Plaintiff only cooks for 15 to 20 minutes at a time because she cannot stand longer. (AR 51.) She waits for her sons to come home before starting to cook dinner so that they can help her. (AR 57.) Her sons help her with any housekeeping she is not able to do. (AR 52.) The Commissioner does not defend the ALJ's reliance on activities and thus appears to concede that it was invalid.

The ALJ discounted plaintiff's testimony because she was not fired from her last job, working as a waitress, for inability to perform her duties. (AR 22.) However, the record shows plaintiff quit her job because she was unable to perform her duties. (AR 36.) This supports, rather than undermines, her testimony. The Commissioner does not defend the ALJ's reasoning and thus appears to concede that plaintiff's reason for leaving her last job was not a clear and convincing reason to discount her testimony.

Receipt of unemployment benefits can undermine a claimant's testimony if it shows an ability to perform full-time work, inconsistent with disability allegations. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Plaintiff acknowledged that in receiving unemployment benefits she was representing that she could work. (AR 46-47.) She was required to apply for jobs, and she applied for waitress jobs. The ALJ asked if she could have performed waitressing jobs, and plaintiff replied, "No, but I don't have any other choice. I don't know how

to do anything else." (AR 46.) The ALJ asked if she could have done other work if offered a job, and plaintiff replied, "Yes, I do it if I have to." (AR 47.) In context, plaintiff's answers indicate that she would have tried to work, but do not indicate that she believed she could sustain full time employment. In these circumstances, receipt of unemployment benefits was not a clear and convincing reason to discount plaintiff's testimony.

An "unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a claimant's testimony, but an ALJ must consider a claimant's proffered reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 679-80 (9th Cir. 2017). Plaintiff declined medication for her urinary symptoms because she had tried it before and it did not work. (AR 44.) Plaintiff declined surgery because her first surgery did not relieve her symptoms and she was afraid of having another surgery. (AR 43.) The ALJ did not address or even mention these reasons. (*See* AR 21.) On remand the ALJ must consider plaintiff's proffered reasons.

An ALJ may reject the claimant's symptom testimony based on contradiction by the medical evidence, but not mere lack of supporting medical evidence. *See Carmickle*, 533 F.3d at 1161; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ did not identify any contradiction with the medical record. He pointed to some benign findings such as normal deep tendon reflexes and independent ambulation, as well as some abnormal findings such as antalgic gait and decreased range of motion in the feet, shoulders, neck, and spine, but did not explain how any of these findings contradict plaintiff's testimony. (AR 20.) Contradiction by medical evidence was not a clear and convincing reason to discount plaintiff's testimony.

Plaintiff saw an osteopathic doctor, Suzanne M. Laurel, D.O., on one occasion. Dr. Laurel concluded that plaintiff's "significant back pain" had a "strong psychologic component," and included "return to work" as one of several "therapeutic recommendations." (AR 764.) The ALJ

ORDER
PAGE - 6

concluded that Dr. Laurel's belief that plaintiff was able to work undermined plaintiff's allegations. (AR 22.) The Social Security disability determination includes both medical and vocational components. Medical training does not equip a provider with vocational expertise. Accordingly, a medical source's opinion of disability or non-disability is not conclusive. 20 C.F.R. § 404.1527(d)(1); *cf. Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (although an ALJ is not bound by the "opinions of the claimant's physicians on the ultimate issue of disability, … he cannot reject them without presenting" legally sufficient reasons for doing so); *see* SSR 96-5p ("[T]he regulations provide that the final responsibility for deciding issues such as [whether an individual is 'disabled'] is reserved to the Commissioner."). In this case, Dr. Laurel did not specify that she believed plaintiff could perform full time work, on a sustained basis, to fulfill her therapeutic recommendation. And even if plaintiff's physical pain had a psychological component, disability may be based on "physical or mental" impairments. 20 C.F.R. § 404.1505(a). Under these circumstances, Dr. Laurel's recommendation that plaintiff return to work was not a clear and convincing reason to discount her testimony.

The ALJ should reconsider plaintiff's testimony on remand.

## Step Two

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. § 404.1520(c). A medically determinable impairment can only be established by objective medical evidence "shown by medically acceptable clinical and laboratory diagnostic techniques" from an acceptable medical source, and not simply by a diagnosis or medical opinion. 20 C.F.R. § 404.1521.

Plaintiff argues that the ALJ erred by failing to find her carpal tunnel syndrome, anxiety,

PTSD, and depression severe. Plaintiff fails to identify clinical or laboratory diagnostic techniques establishing anxiety, PTSD, or depression. However, plaintiff does point to a March 16, 2016 electrodiagnostic study by Ashish Trivedi, M.D., showing "[m]oderately [s]evere left median neuropathy at the left wrist (CTS)." (AR 663.) The ALJ did not address this evidence of carpal tunnel syndrome, despite plaintiff's attorney pointing it out during the hearing. (*See* AR 34 ("She has carpal tunnel in the left wrist characterized as moderately severe, left median neuropathy at the left wrist which was documented by an EMG dated March 16, 2016.").) An ALJ may not reject "significant probative evidence" without explanation. *Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995). On remand, the ALJ must address the evidence associated with carpal tunnel syndrome.

## Medical Opinions and Other Evidence

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester*, 81 F.3d at 830. Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoted source omitted). Where contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoted source omitted).

Plaintiff argues the ALJ erred in discounting the opinions of treating doctor Lilian X. Wu, M.D., and erred in assigning significant weight to the conflicting opinions of non-examining state agency doctor Greg Saue, M.D.

A. <u>Dr. Lilian Wu</u>

The ALJ gave only partial weight to Dr. Wu's December 2015 opinion limiting plaintiff to only low-stress jobs; sitting only 30 minutes at a time, followed by walking for one minute; standing or walking less than two hours total per day; shifting at will from sitting to standing or walking; taking 15 to 20 unscheduled one-minute breaks per day; lifting less than 10 pounds occasionally; twisting occasionally; stooping and crouching rarely; handling 2% of the day, fingering 5% of the day, and reaching 2% of the day; and missing more than four days per month. (AR 483-85.) Dr. Wu also opined that plaintiff's pain would interfere with her attention and concentration frequently. (AR 483.)

The ALJ found Dr. Wu's opinion inconsistent with the treatment notes in the record, which did not show sufficiently extreme abnormalities to support an absentee rate of more than four days per month. (AR 21.) The ALJ also discounted Dr. Wu's opinions because her treatment "focused primarily on the claimant's mental health" and Dr. Wu rarely performed physical examinations. (AR 22.) An ALJ is permitted to discount a doctor's opinion that is inconsistent with her own and other medical examiners' reports. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Plaintiff does not identify any error in the ALJ's analysis. Instead, she argues that the ALJ erred by failing to find carpal tunnel syndrome, anxiety, PTSD, and depression severe. This has no relevance to Dr. Wu's opinions, which do not contain any of those diagnoses. (*See* AR 482-85.)

ORDER
PAGE - 9

The ALJ explicitly rejected Dr. Wu's opinion of four absences per month. (*See* AR 21-22). Plaintiff argues, however, that the ALJ "does not state any reason for rejecting" other specific limitations such as 30 minutes sitting or shifting at will between sitting, standing, and walking. Failure to either incorporate a limitation or provide reasons to reject it is error. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion …, he errs."). The reasons the ALJ gave—inconsistency with her own and other providers' treatment notes—may apply to all the limitations in Dr. Wu's opinion that the ALJ rejected. However, since the case must be remanded for reconsideration of step two and plaintiff's testimony, the ALJ should also clarify his assessment of Dr. Wu's opinion.

B.  Dr. Greg Saue

The ALJ gave significant weight to Dr. Saue's March 24, 2016 opinion that plaintiff could perform sedentary work full time. Plaintiff contends Dr. Saue's opinion is entitled to little weight because he was a non-examining physician and because he did not review any evidence beyond March 2016. Dr. Saue was apparently not aware of the March 16, 2016 left wrist CTS results. (*See* AR 97-99.) Because the ALJ must review his assessment of Dr. Wu's conflicting opinion, the ALJ may need to reconsider his assessment of Dr. Saue's opinion.

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this 18th day of November, 2019.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 10